**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RAKSHPAL ("BEN") DOGRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-cv-00548-SRC |
| | ) | |
| ROBERT GRIFFIN III, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS OR, IN THE ALTERNATIVE, STAY AND COMPEL ARBITRATION**

Plaintiff Ben Dogra opposes Defendant Robert Griffin III's attempt to compel arbitration

of this dispute in the National Football League Players' Association ("NFLPA").  The Motion to

Dismiss should be denied.

**Introduction**

First, Griffin's Motion should be denied because there is no written agreement to arbitrate

between the contracting parties.  The contract at issue in this case is an oral agreement between

Griffin, on the one hand, and Dogra's former employer, CAA Sports, on the other hand.  As alleged

in the operative Complaint, CAA Sports agreed to negotiate endorsement and marketing deals for

Griffin and Griffin agreed to pay CAA Sports 15% of his earnings on those deals.  Doc. 5 at ¶ 10.

There is no written agreement to arbitrate between Griffin and CAA Sports because the NFLPA

Regulations Governing Contract Advisors ("Regulations") (on which Griffin relies in his Motion)

do not apply to sports marketing agencies such as CAA Sports; the Regulations only apply to the

individual Contract Advisors.  Dogra is pursuing this claim through an assignment from CAA

Sports to him.  *See* Doc. 5 at ¶ 6 n.1.  Indeed, Dogra attached the Assignment to his Complaint in

this case.  *See* Doc. 5-1.  Griffin cites no law stating that claims which were not subject to

arbitration automatically become so when assigned to an assignee having related claims that must be arbitrated.  The Motion to Dismiss should be denied for lack of a written agreement to arbitrate between the contracting parties.

Second, Griffin claims that arbitration before the NFLPA is the exclusive method of resolving disputes arising from "the meaning, interpretation or enforcement of a fee agreement." Doc. 36 at 1.[1]  However, the contract at issue in this case does not constitute a "fee agreement" within the meaning of the NFLPA Regulations.  A "fee agreement", as that term is used in the Regulations, is an agreement under which a Contract Advisor handles the negotiation of playing contracts between a Player and an NFL Club.  Indeed, Dogra has already successfully arbitrated his "fee agreement" claims against Griffin in the NFLPA based on 3% commissions owed to Dogra on the playing contracts Dogra negotiated for Griffin with NFL Clubs.  *See* Ex. 1 (filed under seal). The fact that Dogra already arbitrated his "fee agreement" claims against Griffin underscores the distinction between a "fee agreement" within the meaning of the NFLPA Regulations and the oral contract at issue in this case for handling marketing and endorsement deals.  The Motion to Dismiss should be denied for this reason as well.

Third, Griffin is wrong when he claims that Dogra "acknowledged that this case falls within the scope of the FAA."  Doc. 36 at 3.  In fact, Dogra's counsel has always been clear that Dogra's position is exactly the opposite – Dogra's claim is *not* subject to the exclusive jurisdiction of the NFLPA arbitration process, but Dogra was willing to consider "voluntarily" asking the NFLPA to resolve the dispute for the sake of efficiency.  The draft *Joint Motion to Stay* created by Dogra's counsel uses the word "voluntarily" twice in an effort to convey that message.  *See* Doc. 36-3 at ¶ 2 ("The Parties have conferred and have agreed to *voluntarily* submit Dogra's claims" to the

---

[1] Griffin relies on Section 5(A)(3) of the NFLPA Regulations.  *See* Doc. 36-2 at 15.

NFLPA); *id.* at ¶ 3 ("The Parties have agreed to *voluntarily* request that the NFLPA assume

jurisdiction over the Dispute ….."") (emphasis added).  Contrary to Griffin's claim, Dogra never

"acknowledged" that this case is subject to mandatory arbitration and, in fact, said just the opposite.

Fourth, granting Griffin's request to dismiss this case in favor of arbitration would cause

enormous prejudice to Dogra because it could potentially deprive Dogra of a forum in which to

prosecute his claim.  The presence of this prejudice means that Griffin has waived any right he

may have to compel arbitration.  The prejudice that could befall Dogra was revealed through the

actions of Griffin's counsel after filing this Motion to Dismiss.  The Motion explains that Dogra

(at Griffin's initiation and request) recently negotiated with Griffin regarding the terms by which

Dogra and Griffin might agree to jointly and voluntarily approach the National Football League

Players' Association ("NFLPA") and ask it to assume jurisdiction over this dispute.  To that end,

Dogra's counsel drafted a *Joint Motion to Stay Case Pending Arbitration* seeking to memorialize

the terms and conditions under which the parties would "voluntarily" make such a request of this

Court and then of the NFLPA.  *See* Doc. 36-3.  Dogra wanted to ensure that if the case was sent to

the NFLPA, there would be an adequate discovery process and there were no procedural or

administrative bars to resolving Dogra's claim in the NFLPA forum.  Griffin agreed with these

conditions but made a counterproposal by adding his own conditions.  The parties' negotiation of

Griffin's conditions was not successful.  Doc. 36-5.[2]

On September 25, 2019, after negotiations over a voluntary arrangement ended, Griffin

then filed his Motion to Dismiss seeking to compel arbitration.  On September 27, 2019, *after*

---

[2] Nothing in the draft created by Dogra suggests that Dogra believes this case is subject to mandatory arbitration in the NFLPA.  In other words, Dogra was open to the idea of having this dispute handled in the NFLPA if the parties, this Court, and the NFLPA all agreed to do so under certain conditions.

filing his Motion to Dismiss in this case, Griffin's counsel announced that his position had changed.  For the first time, Griffin's counsel informed Dogra's counsel by phone that Griffin will now seek to compel NFLPA arbitration unilaterally and then attempt to dispose of Dogra's claim in its entirety by arguing it is untimely under the NFLPA's short 180-day statute of limitations. *See* Ex. 2 (J. Comerford Declaration).  This is a classic bait-and-switch.  It is now clear that Griffin's effort to compel arbitration would cause enormous prejudice to Dogra if the effort is successful and Dogra's claim is then barred if it is found to fall outside the NFLPA's 180-day statute of limitations.  Given Griffin's change of position, Dogra will no longer consider voluntarily moving this dispute to the NFLPA forum.

## Legal Standard

"Though there is a 'liberal federal policy favoring arbitration agreements' …. a matter should not be sent to arbitration unless there is a valid agreement to arbitrate and the underlying dispute falls within the scope of that agreement." *Northport Health Services of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019) (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and citing *Telectronics Pacing Sys., Inc. v. Guidant Corp.*, 143 F.3d 428, 433 (8th Cir. 1998)).  "While 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[,] ... a party who has not agreed to arbitrate a dispute cannot be forced to do so.'" *Id.* (quoting *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001).

"To determine whether a valid agreement to arbitrate exists, we look to the forum state's contract law" which in this case is Missouri. *Id.* (citing *Baker v. Golf U.S.A., Inc.*, 154 F.3d 788, 791 (8th Cir. 1998)).

Under Missouri law, "[t]he primary rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *Lyster*, 239 F.3d at 946 (quoting *Speedie Food Mart, Inc. v. Taylor*, 809 S .W.2d 126, 129 (Mo. App. 1991)). "A court may evaluate extrinsic evidence to ascertain the parties' intention only if the contract is unclear and ambiguous." *Id.* (citing *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973)).  "The test for determining if an ambiguity exists in a written contract is 'whether the disputed language, in the context of the entire agreement, is reasonably susceptible of more than one construction giving the words their plain meaning as understood by a reasonable average person.'" *Id.* (quoting *Speedie Food Mart*, 809 S.W.2d at 129).

## Summary of Argument

There is no basis for Griffin's position that there is a written agreement to arbitrate this dispute as required by 9 U.S.C. § 4.  Moreover, granting Griffin's Motion to Dismiss would cause enormous prejudice to Dogra because he may be taken from a forum where his claim is timely (this Court) to an alternative forum where the statute of limitations is only 180 days.  Griffin's Motion to Dismiss should be denied.

## Argument

**I.     There is No Written Arbitration Agreement Between CAA Sports and Griffin Concerning this Dispute.**

In this case, Dogra seeks compensation for work done in the course of negotiating numerous marketing and endorsement agreements for the benefit of Griffin.  First Amended Complaint, ¶ 9.  The work was performed under an oral agreement that was made with Griffin in or around January 2012.  *Id.*

In bringing this lawsuit, Dogra stands in the shoes of his former employer, CAA Sports, by virtue of an Assignment.  *See* Doc. 5, First Amended Complaint, ¶ 6 n.1.  Dogra attached the

Assignment to the First Amended Complaint as Exhibit 1.  The Assignment describes an

arbitration that occurred between Dogra and CAA as a result of his departure in November 2014.

The Assignment references the rulings that resulted from that arbitration, and then says that "under

the Rulings, Dogra is entitled to any unpaid …. Marketing Revenues *owed by Robert Griffin III*

*("Griffin") to CAA* arising from contracts that were executed before November 13, 2014."  *See*

Doc. 5-1 at 1 (emphasis added).    The Assignment goes on to say: "Dogra seeks to collect any

unpaid Marketing Revenues owed by Griffin and has asked CAA to provide an assignment of *its*

*rights* to any such revenues to facilitate his collection efforts."  *Id.* (emphasis added).  The core

language of the Assignment is stated in paragraph 1:

> CAA irrevocably hereby assigns, grants, conveys and transfers to
> Dogra all of its right, title and interest in any claims, rights or causes
> of action it may have against Griffin, his heirs, executors and
> assigns, with respect to any failure of Griffin to make commission
> payments to CAA arising out of marketing and endorsement
> agreements CAA generated for Griffin on or before November 13,
> 2014 or otherwise determined to belong to Dogra per the terms of
> the Rulings (the "Assigned Claim").  CAA also hereby sells,
> assigns, grants, conveys, and transfers to Dogra all of its right, title,
> and interest in any and all agreements pertaining to marketing and
> endorsement matters by and between CAA, on the one hand, and
> Griffin, on the other, entered into on or before November 13, 2014
> or otherwise determined to belong to Dogra per the terms of the
> Rulings ("Griffin Contracts"). CAA further sells, assigns, grants,
> conveys, and transfers to Dogra all of its right, title, and interest in
> any and all claims and/or defenses it may have related to the Griffin
> Contracts related to the performance thereunder or breaches thereof.

Griffin claims that the NFLPA Regulations provide the written agreement to arbitrate on

which he relies.  But the NFLPA does not have jurisdiction over disputes between an NFL player

and an entity; it only has jurisdiction over certain disputes between NFL Players and NFL

"Contract Advisors."   The Introduction to the NFLPA Regulations makes clear that the

Regulations do not apply to sports agencies such as CAA Sports.  Instead, the Regulations apply

to the individual "persons" who are certified as Contract Advisors.  Doc. 36-2 at 3 ("Introduction").

The Regulations state further: "Persons serving or wishing to serve as the NFLPA's 'agent'

pursuant to these provisions of the [Collective Bargaining Agreement], which persons are herein

referred to as 'Contract Advisors,' shall be governed by these Regulations."  Doc. 36-2 at 4.

Among other certification requirements, Contract Advisors "must have received an undergraduate

degree from an accredited four year college/university and a post-graduate degree from an

accredited college/university."  Doc. 36-2 at 5.  Contract Advisors must attend "the NFLPA

seminar for new Contract Advisors" and must "pass[ ] a written examination."  *Id.* at 6.  Nothing

suggests that the "Regulations Governing Contract Advisors" apply to sports agencies such as

CAA Sports.

The law is clear that because Dogra's former employer, CAA Sports, did not have an

obligation to arbitrate with Griffin, Dogra inherited that same non-obligation to arbitrate when the

claim was assigned to him.  *See, e.g. Caribbean S.S. Co., S. A. v. Sonmez Denizcilik Ve Ticaret A.*

*S.*, 598 F.2d 1264, 1266–67 (2d Cir. 1979) ("an assignee of a claim takes it with whatever

limitations it had in the hands of the assignor. …. One cannot make an arbitrable claim out of a

non-arbitrable one by assigning it to a person having a broad 'any dispute' arbitration contract with

the party against whom the claim lies, at least in the absence of evidence showing that the parties

to the arbitration contract intended such a result.").[3]  *See also Wojtalewicz v. Pioneer Hi-Bred Int'l,*

---

[3] The claim in *Caribbean S.S. Co., S. A.* was ultimately found to be arbitrable based on the "unusual set of circumstances" presented – circumstances which are not presented here. Specifically, the Court found that "[w]hile the arrangement between the insurer and the charterer is styled as an assignment" the claim was viewed by the Court as actually being, in substance, "a claim for indemnity". *Id.* at 1267. "Since the shipowner apparently concedes that it could be compelled to arbitrate a claim for indemnity of the charterer, we hold it must arbitrate the claim asserted here." *Id.* The ultimate holding of the case is distinguishable on its facts, but the Court's statement of the law on assignments is often cited approvingly.

*Inc.*, 939 F. Supp. 2d 965, 973 (D. Neb. 2012) ("If an assignor's claim is subject to arbitration, it remains subject to arbitration when pursued by an assignee. .... However, the parties have not briefed, and the court has not found, law stating that claims which were not subject to arbitration automatically become so when assigned to an assignee with related claims that must be arbitrated.").

In discovery, Dogra is prepared to show that Griffin made a payment to CAA Sports in the amount of $811,173.45 on April 17, 2014.  Part of this payment ($582,501.64) was for marketing commissions owed to CAA Sports.  The remainder was for Contract Advisor fees owed by Griffin to Dogra based on the 2012-2013 NFL season.  The fact this payment was made by Griffin to CAA Sports shows that Griffin recognized the existence of the oral agreement at the center of this case and recognized that CAA Sports was his counter-party to that agreement.  The payment that was made by Griffin in April 2014 covered the same marketing and endorsement deals with Gatorade, Nissan and other companies that are at issue in the current dispute.  The current dispute seeks the commissions that CAA Sports is owed (and that Dogra is now owed pursuant to the Assignment) for those same marketing and endorsement deals that resulted in earnings for Griffin in later years.

Because there is no written agreement to arbitrate any dispute between CAA Sports and Griffin, Griffin's request to arbitrate the claims in this case should be denied.

## II.    The Oral Agreement for Marketing and Endorsement Work at Issue in this Case is Not Within the Scope of the NFLPA Arbitration Provisions.

Griffin's attempt to compel arbitration fails for the independent reason that while there is a valid agreement to arbitrate between Dogra and Griffin found in Section 5 of the NFLPA Regulations, this dispute does not fall within the scope of that arbitration agreement because the underlying oral contract is not a "fee agreement" under the applicable NFLPA rules and regulations.

Griffin contends that arbitration through the NFLPA is the "exclusive method" for resolving this dispute because it is a dispute over "the meaning, interpretation or enforcement of a fee agreement."  Doc. 36, Memo., at 1.  But the agreement that was breached is not a "fee agreement" within the meaning of the NFLPA Regulations.  Several areas of the NFLPA Regulations make this clear.

First, the Introduction to the NFLPA Regulations makes clear that the Regulations were "adopted" for the purpose of governing the relationship between Players and Contract Advisors in the course of "conducting individual contract negotiations and/or assisting in or advising with respect to such negotiations with the member Clubs of the National Football League ('NFL')."  Doc. 36-2 at 3.  That does *not* describe the work that was being done for Griffin under the oral contract.  Instead, CAA Sports was negotiating on Griffin's behalf with companies for marketing and endorsement opportunities.

Second, Section 1(B) of the Regulations describes the "Activities Covered" by the Regulations.  It reads:

> The activities of Contract Advisors which are governed by these Regulations include: the providing of advice, counsel, information or assistance to players with respect to negotiating their individual contracts with Clubs and/or thereafter in enforcing those contracts; the conduct of individual compensation negotiations with the Clubs on behalf of players; and any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations, including the handling of player funds, providing tax counseling and preparation services, and providing financial advice and investment services to individual players.

In other words, the Regulations govern three areas: (1) the activities of Contract Advisors in advising Players on their negotiations for contracts "with Clubs"; (2) the activities of Contract Advisors in conducting individual compensation negotiations "with Clubs", and (3) activities or

9

conduct which "directly bears" on the Contract Advisor's "integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations[.]" By contrast, the activities at issue in this case – negotiating endorsement and marketing deals with companies outside the NFL – are not activities covered by the Regulations.

Third, while the term "fee agreement" is not defined in the Regulations, Section 4 of the Regulations discusses the "fees" that a Contract Advisor may charge to a Player.  Doc. 36-2 at 14. Section 4 makes clear that a "fee" within the meaning of the Regulations is the maximum 3% commission that a Contract Advisor can receive on a player's contract with an NFL Club.  By contrast, the oral agreement at issue in this case called for Griffin to pay to CAA Sports 15% of the revenue he received on endorsement and marketing deals.  Section 4, when read in harmony with Section 5(A)(3)'s reference to "fee agreement", makes clear that the oral agreement at issue in this case is not a "fee agreement" within the meaning of Section 5(A)(3).

Finally, the fact that the oral contract at issue here is not a "fee agreement" is highlighted by the fact that Dogra has already arbitrated his "fee agreement" claims against Griffin in the NFLPA.  This resulted in a written Opinion and Award from NFLPA Arbitrator Roger Kaplan. *See* Ex. 1 (filed under seal).  This fact highlights the difference between an arbitrable "fee agreement" dispute and the oral contract that is in dispute in this case.

## III.   Dogra Never "Acknowledged" that this Case Falls Within the Scope of the Federal Arbitration Act.

Griffin is wrong when he claims that Dogra "acknowledged that this case falls within the scope of the FAA."  Doc. 36 at 3.  This argument is the *exact opposite* of what Dogra's counsel has consistently communicated to counsel for Griffin.  Dogra's counsel has always been clear that Dogra views this claim as *not* subject to the exclusive jurisdiction of the NFLPA.

Griffin's counsel urged Dogra's counsel to consider voluntarily submitting this dispute to arbitration before the NFLPA even though Dogra asserted it did not need to be brought in that forum. Dogra was willing to consider "voluntarily" asking the NFLPA to resolve the dispute for the sake of efficiency. The draft document created by Dogra's counsel uses the word "voluntarily" twice to convey that message. *See* Doc. 36-3 at ¶ 2 ("The Parties have conferred and have agreed to *voluntarily* submit Dogra's claims" to the NFLPA); *id.* at ¶ 3 ("The Parties have agreed to *voluntarily* request that the NFLPA assume jurisdiction over the Dispute ….") (emphasis added). Contrary to Griffin's claim, Dogra never "acknowledged" that this case is subject to mandatory arbitration and, in fact, said just the opposite.

**IV.    Griffin's Request to Compel Arbitration Could Prejudice Dogra.**

Griffin argues he did not waive the right to arbitrate because Dogra will not be prejudiced if Griffin's Motion is granted. A party waives its right to arbitration when it (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) the inconsistent acts prejudiced the other party. *Stifel, Nicolaus & Co. Inc. v. Freeman*, 924 F.2d 157, 158 (8th Cir. 1991).

Here, the "inconsistent acts" are Griffin's participation in this case and his delay in asserting the right to arbitrate. Dogra filed this suit on March 22, 2019. Griffin waived service of process on April 11, 2019 (Doc. 6) and filed his Answer on May 21, 2019. (Doc. 7). The Answer made no reference to an alleged agreement to arbitrate. *Id.* Griffin's new attorney, Kevin Fritz, contacted Dogra's counsel for the first time on September 11, 2019; it was sometime after that date that Mr. Fritz first broached the topic of asking Dogra to consider voluntarily moving this case to arbitration in the NFLPA. It was not until September 25, 2019 that Griffin moved to compel arbitration. 187 days passed between the filing of this lawsuit (March 22) and the date of the Motion (September 25).

Dogra would be prejudiced by Griffin's delay in asserting the right to arbitrate if the NFLPA statute of limitations is found to have expired during Griffin's delay. *Aqualucid Consultants, Inc. v. Zeta Corp.*, 721 Fed. Appx. 414, 418 (6th Cir. 2017) ("There are many ways to establish prejudice, such as showing that a party waited until a statute of limitations expired to invoke arbitration...."); *In re Citigroup, Inc.*, 376 F.3d 23, 27 (1st Cir. 2004) ("Plaintiffs claim prejudice due to the delay for several reasons. First, plaintiffs argue, and we agree, that if the arbitrable claims are sent to arbitration they may be subject to new defenses related to the statute of limitations and the equitable doctrine of laches; and even if the defenses are not successful, plaintiffs will have to respond to them."); *Vega v. Contract Cleaning Maint.*, 2006 WL 1554383, at *5 (N.D. Ill. June 1, 2006) ("The Texas Defendants delay in seeking arbitration has likely prejudiced the Texas Arbitration Plaintiffs regarding the statute of limitations. Sending the Texas Arbitration Plaintiffs claims to arbitration may be the same as a dismissal with prejudice because they may not have the ability to refile in that forum. For these reasons, the Texas Defendants have waived their right to arbitrate the Texas Arbitration Plaintiffs' claims against them.").

The case of *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 358 (6th Cir. 2003) illustrates the problem:

> the fact that the arbitration provision contains a 180–day limitation provides a further basis to conclude that Defendant waived its right to arbitrate. That is, for about one year Defendant appeared to engage in negotiations with Plaintiff as if the claims were, as Plaintiff has consistently maintained, not subject to arbitration; then, after suit was filed Defendant prolonged the matter for two more months before claiming that the matter was governed by the Agreement's arbitration provision. However, at this point, Defendant made the claim that the matter was one for arbitration under the Agreement, secure in the knowledge that the 180–day limitation had long expired inasmuch as the alleged breach of which Plaintiff complained occurred in April of 1997. In fact, when Defendant submitted the matter to arbitration, it did so making a preliminary motion to dismiss Plaintiff's claims as time-barred.

12

> Under these facts, Plaintiff suffered "actual prejudice" by Defendant's "delaying its assertion" regarding arbitrability …. and Defendant should therefore be found to have waived its arbitration rights.

Griffin's purpose in bringing this Motion is not simply to change forums. The NFLPA arbitration process has a short, 180-day statute of limitations. Griffin's gambit is clear – he is trying to dispose of Dogra's claim entirely by forcing it from a forum where it is timely into a forum where Griffin will argue it is not timely. Griffin's new counsel, Mr. Fritz, expressly admitted that this is his plan during a phone call with Dogra's counsel. *See* Ex. 2 (J. Comerford Declaration). This fact goes to prejudice. Because of the prejudice that could result if Griffin's Motion were to be granted, the Court should find that Griffin has waived his right to compel arbitration.

## Conclusion

For these reasons, Dogra respectfully requests that this Court enter an Order denying Griffin's *Motion to Dismiss or, in the Alternative, Stay and Compel Arbitration*, and grant such other and further relief as is just and proper.

Dated: October 9, 2019                Respectfully submitted,

**DOWD BENNETT LLP**

By:    /s/ John D. Comerford
John D. Comerford, MO #60164MO
James B. Martin, MO #70219MO
7733 Forsyth Blvd., Suite 1900
St. Louis, MO 63105
Telephone: (314) 889-7300
Facsimile: (314) 863-2111
jcomerford@dowdbennett.com
jbmartin@dowdbennett.com

*Attorneys for Plaintiff Rakshpal ("Ben") Dogra*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2019, the foregoing document was filed electronically with the Clerk of Court and served by operation of the Court's electronic filing system upon all counsel of record in this case participating in Electronic Case Filing.

/s/ John D. Comerford

*Attorneys for Plaintiff Rakshpal ("Ben") Dogra*