**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAHKSPAUL ("BEN") DOGRA, | ) | |
| | ) | Case No. 4:19-cv-00548 (SRC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT GRIFFIN, III, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Dogra wants to convene a jury without any material factual issues to decide.  It is undisputed that the oral agreement was terminable at will and that Griffin terminated it in 2014. (Doc. 77, ¶¶ 14, 34).  As a matter of *law*, Griffin has no post-termination liability.

Ignoring the standard of review on summary judgment motions, Dogra incorrectly argues that if he merely "alleges" something (without submitting admissible evidence), he is entitled to "prove at trial" his allegations. (Doc. 76, p. 3, 5).  For instance, Griffin testified he *never agreed* to pay commissions to CAA Sports on fees generated after termination of the oral agreement. (Doc. 71-6, at 146:15 – 147:22, 255:12 – 20).  Dogra admitted at deposition: (1) he had no basis to dispute Griffin's testimony; and (2) "if the player terminates CAA, then *CAA has no rights* or obligations under the contract." (Doc. 71-7, at 163:17 – 18, 277:24 – 278:4)(emphasis added).  The opposition brief simply ignores Dogra's acknowledgement that CAA Sports had no post-termination rights, which admission is dispositive.

1

Despite the undisputed fact there was no agreement to pay post-termination commissions, Dogra wants to somehow "prove at trial" that such obligation existed. (Doc. 76, p. 5, 18, 19)(citing to his pleading, but no evidence).  Of course, if allegations in a pleading were enough to defeat summary judgment, every well-pleaded case would proceed to trial.  That is not the law.

Dogra's plea that enforcing the at-will nature of the oral agreement is somehow "unreasonable" (Doc. 76, p. 5 – 6) overlooks that Dogra himself assured Baylor University that client-athletes (such as Griffin) can terminate a marketing contract "at any time" (Doc. 71-12; Doc. 77, ¶ 15) and that CAA Sports was a sophisticated sports marketing powerhouse content on foregoing a written agreement with Griffin because CAA Sports was profiting from a talented young man thrust into fortune, which he worked all his life to earn.

## II.     ARGUMENT

### A.     Dogra Failed to Submit Probative Evidence Creating a Triable Controversy

Where, as here, the moving party establishes the lack of any genuine issue of fact material to a judgment in its favor, "the non-moving must then set forth affirmative evidence and specific facts demonstrating a genuine dispute on the specific issue." *Smith v. Holder*, No. 17-117, 2020 WL 40237, at *6 (E.D.Mo. Jan. 2, 2020)(Clark, J.).   "When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but, by affidavit and other evidence, must set forth specific facts showing a genuine dispute of material fact exists." (*Id.*)(citing FRCP 56(c)(1); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002)).   "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).   Here, instead of producing *evidence* to show a genuine issue of material fact, Dogra cites the Amended Complaint and argues he will "prove" those *allegations* at trial. Dogra failed to satisfy his evidentiary burden, and summary judgment is proper.

2

**B.     The Claims Are Barred by the Statute of Limitations**

1.     <u>California Has the Most Significant Relationship to the Oral Agreement</u>

For choice-of-law issues in contract disputes, the place of contracting is where "the last act necessary to form the contract" occurred. *Spirtas Co. v. Insurance Co. of State of Penn.*, No. 05-100, 2006 WL 1300669, * 5 (E.D. Mo. May 9, 2006)(citing *Dillard v. Shaughnessy, Fickel, and Scott Arch., Inc.*, 943 S.W.2d 711, 716 (Mo. App. 1997)); *see also Hicks Body Co., Inc. v. Ward Body Works, Inc.*, 233 F.2d 481, 486 (8th Cir. 1956)(last act of signing written instrument occurred in Arkansas, and thus contract was made in Arkansas).  Here, the last act to create the oral agreement occurred in California because the full scope of Services that CAA Sports would provide under the agreement was "first discussed" at the January 25, 2012 meeting in California (as confirmed by the Declaration of former CAA Sports employee Mark Heligman)(Doc. 71-8, ¶ 8).  Heligman confirmed at his deposition that various Services "were not discussed with [Griffin] until he got to Los Angeles" and that he "never … had any conversations with [Griffin] about these specific things prior to L.A." (Doc. 76-1, at 112:20 – 113:9).  The purpose of Griffin's visit to Los Angeles "was for CAA to demonstrate to Griffin the full scope of CAA's vast overall marketing … capabilities that could be provided to him" and that "CAA accomplished its objective" at the meeting in California. (Doc. 71-8, ¶¶ 5, 7).[1]  Hence, while Dogra notes that CAA Sports sourced deals on Griffin's behalf prior to the January 25, 2012 meeting (Doc. 76, p. 12), CAA Sports' zeal to impress Griffin (fresh off winning the Heisman Trophy) does not change that the last act necessary to create the oral agreement (*i.e.,* the scope of Services) occurred in California.

---

[1] With respect to Dogra's reference to various drafts of Heligman's Declaration (Doc. 76, p. 17), Heligman testified that he did not want "to make legal conclusions about where the agreement was formed because [he] knew that was the substance of this case." (Doc. 76-1, at 92:12 – 93:6).  Heligman's hesitation to draw legal conclusions does not change his factual testimony that various Services that CAA Sports would perform under the oral agreement were not discussed with Griffin until he met with CAA Sports at its Los Angeles headquarters.

Dogra contends that a Marketing Representation Notice dated January 19, 2012, purportedly "signed" by Griffin shows that the oral agreement with CAA Sports was formed prior to the January 25, 2012 meeting in California. (Doc. 76, p. 11). However, the Notice is not authentic. Griffin's unrefuted testimony is he did not sign it, someone else placed a digital version of his signature on it, and he never saw it prior to this litigation. (Doc. 71-6, at 29:19 – 31:5, 36:2 – 21, 37:14 – 18).  Furthermore, the Standard Representation Agreement (SRA) between Dogra and Griffin, dated January 19, 2012, and concerning Griffin's playing contract with the NFL, required Dogra to identify "separate agreements" with Griffin related to "other services," and Dogra only identified a "Personal Training Agreement" between CAA Sports and Griffin. (Doc. 71-11, ¶ 3). If CAA Sports and Griffin had entered into the oral marketing agreement by January 19, 2012 (*i.e.*, prior to the California meeting), as Dogra claims, then it would have been listed in the SRA.  The omission of the oral agreement from the SRA is proof that it was not formed until the January 25, 2012 meeting in California.  Dogra concedes this point by failing to address it.

Neither of the parties to the oral agreement resided, was incorporated, or maintained its principal place of business in Missouri.  Dogra concedes that CAA Sports was formed in California and maintains its headquarters in California, and that Griffin has never resided in Missouri. (Doc. 77, ¶¶ 1, 2).  Dogra's current residency in Missouri (Doc. 76, p. 14) is irrelevant because the oral agreement was entered into by Griffin and CAA Sports (not Dogra) and courts look to the parties' residence *at the time of contracting*. *Brown v. Home Ins. Co.*, 176 F.3d 1102, 1107 (8ᵗʰ Cir. 1999).

Dogra admits all money flowed through California bank accounts: CAA Sports used its California bank account to collect endorsement fees owed by third parties to Griffin; CAA Sports used its California bank account to forward such monies to Griffin; Griffin deposited such monies into a California-based account at Morgan Stanley; Griffin paid commissions to CAA Sports from

that same California account; and CAA Sports deposited the commissions into its California bank account. (Doc. 77, ¶¶ 21, 23, 25).  Thus, the place of performance is California. *See Manidhari Gums & Chem. v. Caremoli USA, Inc.*, No. 16-112, 2016 WL 8809862, at *12 (S.D. Iowa Dec. 21, 2016)(party's place of performance was Iowa because it paid from bank in Des Moines).

While Dogra notes certain third-parties (such as Adidas) addressed checks for Griffin's benefit to CAA Sports' satellite office in Missouri (Doc. 76, p. 13 – 14), Heligman confirmed that checks sent to the Missouri office for Griffin's benefit were forwarded to CAA Sports' headquarters in California for processing. (Doc. 76-1, at 161:12 – 162:9).  In any event, CAA Sports shuttered its Missouri satellite office upon firing Dogra in 2014. (Doc. 77, ¶ 27).

Dogra's emphasis on the Missouri location of one CAA Sports employee (Heligman) (Doc. 76, p. 13) overlooks that the giant CAA Sports organization had multiple people *in California* rendering various services to Griffin pursuant to the oral agreement: Howard Nuchow (Co-Head of CAA Sports), Judy Ann Williams (CAA Foundation), Darnell Strom (CAA Foundation), the licensing agent, the accounting department, etc. (Doc. 76-1, at 158:14 – 162:9).  And, it is undisputed that Heligman himself traveled with Griffin to California endorsement sites, including those for Nissan and Adidas (Doc. 76, ¶ 26).  Commissions from those California deals are the majority of those sought herein. (Doc. 71-24, at RG000110 – 000112).

Thus, California law applies, and its two-year statute of limitations bars all claims.

2.    Under the Alternative, Texas Law Applies

It is undisputed that Griffin maintains his residence in Texas, that Dogra met with Griffin in Texas during January 2012 to discuss CAA Sports' services, and that another CAA Sports employee (Tracy Lartigue) met with Griffin in Texas during January 2012 to discuss CAA Sports' services. (Doc. 77, ¶¶ 1, 5, 8).  Furthermore, it is undisputed that, in January 2012, Dogra and Griffin executed the SRA and that the SRA expressly states it is governed by Texas law. (*Id.*, ¶¶

5

6, 7).  If the Court does not find that California law governs, the Court should apply Texas law, and hold its four-year statute of limitations bars all claims predating March 22, 2015.

In all events, because Dogra concedes that under Missouri's statute of limitations, only claims accruing "after March 22, 2014 are viable," (Doc. 76, p. 10), the Court should dismiss the claims for commissions from January and February 2014, aggregating $72,482.79. (Doc. 71-24).

      3.      The Statute of Limitations Was Not Tolled

Citing *Anderson v. Stanley*, 753 S.W.2d 98 (Mo. App. 1988), Dogra argues that Griffin's April 2014 payment of commissions owed to CAA Sports for the year 2013 somehow acknowledged alleged future debts (for 2014, 2015, and 2016) that did not yet exist. (Doc. 76, p. 14).  In *Anderson*, defendant's partial payment of two promissory notes was held to toll the statute of limitations because they were "made under circumstances that recognize the *remaining* debt as existing and are consistent with an intent to pay the *balance*." *Id.* at 100 (emphasis added).  Dogra concedes that Griffin paid CAA Sports' 2013 invoice for marketing commissions *in full* (Doc. 77, ¶ 24), and thus there was no "remaining debt" or "balance."   Dogra further admits a separate invoice was later issued for 2014 commissions. (*Id.*, ¶ 30).

It is *undisputed* that, prior to March 2015, CAA Sports' accounting department called Griffin's financial advisor Jeffrey Wiseman asking for payment of the 2014 invoice, and Wiseman told CAA Sports that Griffin is not paying any more marketing commissions to CAA Sports. (Doc. 77, ¶ 31).  That is worth repeating: Dogra concedes that, by March 2015, Griffin (via his agent) had told CAA Sports no further commissions would be paid.  That undisputed fact warrants rejection of Dogra's tolling argument, regardless of the letters which, *years later*, counsel for both Dogra and CAA Sports piled onto Griffin's then-counsel. (Doc. 76, p. 15).[2]

---

[2] Griffin never told CAA Sports, Dogra or Heligman that he owed any commissions to CAA Sports or Dogra (Doc.

9193/1/7910743.v1

**C.      The Unilateral Partial Assignment of a Personal Services Contract is Invalid**

Griffin's initial brief demonstrated that CAA Sports' purported assignment of its oral marketing agreement, without his consent, violates Missouri law.[3]

1.      The Assignment Was Not of a Debt or Claim

Dogra first contends that CAA Sports did not assign a personal services contract, but merely "the right to collect from Griffin monies that were owed to CAA." (Doc. 76, p. 7).  That position is directly contradicted by the Assignment of Rights, which states: (a) CAA Sports assigned to Dogra, *inter alia*, its interests "in any and all agreements pertaining to marketing and endorsement matters" with Griffin; and (b) Dogra assumed CAA Sports' "duties, liabilities and obligations" under CAA Sports' agreements with Griffin. (Doc. 5-1, ¶¶ 1 – 2).  Thus, Dogra is not "simply … the assignee of CAA's right to collect" an alleged debt from Griffin. (Doc. 76, p. 7).

2.      Missouri's Public Policy Does Not Solely Protect Employees

Next, Dogra attempts to distinguish *Roeder v. Ferrell-Duncan Clinic, Inc.*, 155 S.W.3d 76, 85 (Mo.App. 2004) because it involved a medical clinic's assignment of a physician's employment contract without his consent, whereas here the principal (Griffin) did not assign his oral agreement with CAA Sports (the agent).  (Doc. 76, p. 7 – 8).  However, Missouri courts similarly invalidate an agent's unilateral assignment of a personal services contract. *See Allied Pipe Line Corp. v. Studley*, 191 S.W.2d 317, 320 (Mo. App. 1946)(improper assignment of contract to manage oil refinery).  Hence, Missouri's public policy protects Griffin from his agent's (CAA Sports) unilateral assignment of their contract under which CAA Sports was to render personal services.

---

71-10, ¶ 38), and thus Heligman's testimony that Griffin acknowledged a debt is mistaken. (Doc. 76, p. 16 n.4).  In any event, the Court need not reconcile that testimony, because it is undisputed that CAA Sports was told prior to March 2015 that no further marketing commissions would be paid by Griffin. (Doc. 77, ¶ 31).

[3] The Assignment of Rights states that it is governed by Missouri law. (Doc. 5-1, ¶ 5).

9193/1/7910743.v1

D.    **Breach of Contract[4]**

1.    There is No Post-Termination Liability

Griffin's initial brief contains a page-long description of the Missouri Court of Appeals'

decision in *Sales Serv., Inc. v. Daewoo Int'l (America) Corp.*, 770 S.W.2d 453 (Mo.App. E.D.

1989), which held that an oral agreement for consultation services "merely created an employment

at will which was terminable at anytime by either side with no liability for breach of contract." *Id.*

at 456. (Doc. 71, p. 9).  Griffin's brief cited two other Missouri decisions for the same proposition.

(Doc. 71, p. 10). Because it is undisputed that the oral agreement herein was terminable at will and

that Griffin duly terminated it in December 2014 (Doc. 77, ¶¶ 14, 34), Griffin cannot, *as a matter*

*of law*, be liable for any commissions based upon fees generated by him in 2015 and 2016.

Conveniently ignoring *Sales Serv.* and the other Missouri caselaw cited in Griffin's brief,

Dogra incorrectly argues that Griffin failed to "cit[e] any authority" for the proposition that he is

not liable for post-termination commissions. (Doc. 76, p. 18).  The *Sales Serv.* case mandates

summary judgment in Griffin's favor on Dogra's claims for $222,188 in commissions for 2015

and $58,714 in commission for 2016.

There is no genuine issue of fact concerning the lack of any agreement between CAA

Sports and Griffin concerning post-termination obligations.  In his Declaration, Griffin affirms that

CAA Sports never suggested, or told him, that if their oral marketing agreement was terminated

(by either party), he still had to pay commissions on endorsement fees paid to him after the

termination of the agreement. (Doc. 71-10, ¶ 14).  Griffin further affirms that he never agreed to

pay any such post-termination commissions to CAA Sports. (*Id.* ¶ 15). Griffin consistently testified

---

[4] The substantive analysis assumes that Missouri law applies because, if California law applies then all claims are barred by its two-year statute of limitations, and if Texas law applies, a significant portion of the claims are barred by its four-year statute of limitations.

9193/1/7910743.v1

at deposition that CAA Sports would be paid commissions *if* it was performing services for him and that he never agreed to pay post-termination commissions to CAA Sports. (Doc. 71-6, at 107:1 – 22, 138:22 – 139:20, 143:5 – 12, 146:15 – 147:22, 255:12 – 20).

When asked whether he had any basis to dispute Griffin's testimony that Griffin never agreed to pay post-termination commissions, Dogra responded: "Not to the best of my knowledge." (Doc. 71-7, at 277:24 – 278:4). However, Dogra went further and testified that "if the player terminates CAA, then CAA has no *rights* or obligations under the contract." (Doc. 71-7, at 163:17 - 18)(emphasis added). That dispositive admission is not addressed anywhere in Dogra's 25-page brief, despite being highlighted in Griffin's initial brief. (Doc. 71, p. 10).

While Dogra cites to the deposition testimony of former CAA Sports employee Mark Heligman (Doc. 76, p. 19), Heligman testified *he has no personal knowledge* that CAA Sports and Griffin agreed to post-termination liability:

> Q.   All right. Did Robert ever expressly agree to pay commissions to CAA on fees that he received after he had terminated the oral agreement? I'm talking about in 2012. Did you ever -- let me rephrase. In January of 2012, did Robert ever say to CAA Sports, to your knowledge, I agree, CAA Sports, that if either of us terminates this oral agreement, I still have to continue to pay you commissions on the fees that were generated?
>
> A.   I never heard him say that, no.
>
> Q.   Now, did you ever hear CAA Sports in January of 2012 say to Robert, in sum or substance, Robert, if either of us terminate this oral agreement, you still have to pay us commissions on fees that you receive after termination?
>
> A.   I never heard that either.

(Doc. 76-1, at 116:18 – 117:9). After Heligman provided his opinion as to what the industry practice is, he again testified that he has no personal knowledge of any agreement between CAA Sports and Griffin concerning post-termination obligations:

9193/1/7910743.v1

> Q.    Do you remember you testified earlier that you don't have any personal knowledge that Robert agreed to those terms? Correct?
>
> A.    With CAA.
>
> Q.    With CAA.
>
> A.    That's correct.
>
> Q.    Correct? And you don't have any personal knowledge that CAA ever told Robert that that was going to be part of its oral agreement with Robert. Correct?
>
> A.    That's right. I was not in those conversations. Correct.
>
> Q.    Right. So, the testimony that you're giving in response to Mr. Comerford's question is simply based upon your understanding of what the industry practice is. Correct?
>
> A.    Yeah, that's correct.

(*Id.* at 170:4 – 20).  Heligman's testimony lacks probative value with respect to post-termination obligations of CAA Sports and Griffin. *See Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004)(deposition testimony without personal knowledge should be disregarded).[5]

Without any evidence that the oral agreement required Griffin to pay commissions after termination thereof, Dogra argues that his *allegations* in the Amended Complaint are enough to avoid summary judgment. (Doc. 76, p. 5, 18, 19).  However, "[e]vidence, not contentions, avoids summary judgment." *Larry v. Potter*, 424 F.3d 849, 851 (8th Cir. 2005).  Dogra misplaces his reliance upon *Bertelsen v. Channel Bio, LLC*, No. 16-330, 2017 WL 6059176 (E.D. Mo. Dec. 7, 2017).  In that case, each party "presented evidence" in the form of deposition testimony, a declaration and/or documents regarding whether a contract was formed. *Id.* at *1, *2, *4.  To the

---

[5] Dogra's reliance upon *Essco Geometric v. Harvard Indust.*, 46 F.3d 718 (8th Cir. 1995), for the proposition that Heligman's fact testimony is admissible to explain the oral agreement's terms concerning post-termination obligations, is misplaced because in that case the Eighth Circuit held that "the prior relationship" *between the parties* made a submissible case of apparent authority.  Here, there was no prior relationship between CAA Sports and Griffin.

9193/1/7910743.v1

contrary, Dogra failed to submit any *evidence* that Griffin and CAA Sports agreed that either of them would be liable to the other after the termination of the oral agreement.

Two documents signed by Dogra show his understanding, to the extent relevant, was Griffin could terminate a marketing agreement with CAA Sports "at any time" – an Athlete-Agent Registration form he filed with Baylor University and a proposed written marketing agreement (never signed by Griffin). (Doc. 77, ¶¶ 15, 17).  Dogra's opposition is silent as to both.

### 2.   Dogra Does Not Dispute CAA Sports Paid Itself Post-Termination Commissions

Griffin's initial papers explained that, in 2015 and 2016 (after termination of the oral agreement), and without his consent, CAA Sports paid itself commissions (out of monies owed by third parties to Griffin) aggregating $56,256.10. (Doc. 71, p. 11).  Dogra concedes such facts. (Doc. 77, ¶ 36).  His only substantive response is "Griffin's liability for 2015 and 2016 commissions is disputed." (Doc. 76, p. 19 – 20).  Because, as noted above, there is no triable issue regarding Griffin's liability for 2015 and 2016 commissions, Griffin is entitled to an offset.

### 3.   Dogra Cannot Prove the Agreement He Alleges Was Formed

Our initial brief cited *Fedynich v. Massood*, 342 S.W.3d 887, 893 (Mo. App. W.D. 2011) for the proposition that Dogra cannot prove the oral agreement alleged in his Amended Complaint, and thus Griffin is entitled to judgment as a matter of law. (Doc. 71, p. 8 – 9).  The Amended Complaint alleges CAA Sports was *solely* obligated under the oral agreement to negotiate endorsement deals. (Doc. 5, ¶¶ 6, 9).  "The rule in Missouri is that, in a contract case, the plaintiff may recover, if at all, only on the contract she pled; she may not recover on some other contract." *Hutchens v. Burrell, Inc.*, 342 S.W.3d 399, 403 (Mo. App. 2011).  Dogra cannot prove the contract he pled – *i.e.*, that CAA Sports merely had to negotiate endorsement deals.

9193/1/7910743.v1

The undisputed evidence shows that CAA Sports agreed to provide Griffin with almost twenty different types of services (the "Services"), *in addition to* negotiating endorsement deals. Those Services are specified in the Declaration of Robert Griffin (Doc. 71-10, ¶ 10) and the Declaration of Mark Heligman (Doc. 71-8, ¶ 8)("CAA Sports agreed to provide Mr. Griffin the following services…."). Significantly, the *Co-Head of CAA Sports*, Michael Levine, confirmed that CAA Sports agreed to provide Griffin with the Services (specified in the Heligman Declaration). (Doc. 71-9, at 19:15 – 21). At his deposition, Heligman confirmed that, as part of the oral agreement, CAA Sports agreed to provide the "long list" of Services to Griffin. (Doc. 76-1, at 50:25 – 52:5). The same portion of Heligman's testimony cited in Dogra's brief (Doc. 76, p. 17) confirms this point:

> Q.    … My question was: did CAA Sports agree to provide all of these services to Robert?
>
> A.    Yes.

(Doc. 76-1, at 115:13 - 15). Hence, Dogra cannot recover on the limited contract he pled.

### 4.    The Agreement, as Alleged by Dogra, is Barred by the Statute of Frauds

Griffin's initial brief explained, to the extent that Dogra alleges CAA Sports was entitled under the oral agreement to commissions based upon endorsement fees received by Griffin *after* termination (such as those in 2015 and 2016), any such agreement is barred by the statute of frauds. (Doc. 71, p. 13). Dogra's response demonstrates his irreconcilable legal positions herein.

According to Dogra: "it is hypothetically possible that the oral agreement could have been performed within one year if, for example, CAA had procured one discrete endorsement deal for Griffin and then he immediately terminated." (Doc. 76, p. 21). Stated differently, no performance is due after termination. However, in his same brief, Dogra contends: "Griffin is obligated to pay

12

the 15% commission on any earnings he received from endorsement and marketing deals that CAA negotiated and secured for Griffin prior to the termination of the agreement, regardless of when the revenue was eventually received by Griffin." (*Id.*, p. 5).  Stated differently, Griffin must perform and pay commissions even after termination (according to Dogra).  Which one is it?

 "Whether a promise falls within the statute of frauds is a question of law for the court." *Shelton v. Kennedy Funding, Inc.*, 622 F.3d 943, 952 (8th Cir. 2010).  If the Court finds that the oral agreement violates the statute of frauds because, in Dogra's view, Griffin was obligated to pay commissions (for an indefinite duration) on fees he obtained post-termination, then the *entire* agreement is unenforceable. *See Holmes v. Torguson*, 41 F.3d 1251, 1256 (8th Cir. 1994).  On the other hand, if the Court finds that Griffin had no obligation to perform after he terminated the at-will oral agreement in December 2014, then Dogra's claims for commissions for 2015 and 2016 must be dismissed.  Dogra knows it cannot be both.  He wants a jury trial to confuse the panel, increase Griffin's expenses, and inconvenience Griffin.

Dogra makes no attempt to distinguish *Levine v. Zadro Prod., Inc.*, No 02-2838, 2003 WL 21344550 (S.D.N.Y. June 9, 2003), which involved very similar facts (marketing/sales representative sued to recover commissions on defendant's post-termination sales).  While Dogra correctly notes that *Levine* applied New York law, that is immaterial because both state statutes pertain to an "agreement" that "is not to be performed within one year from the making thereof…." (Mo. Stat. Rev. § 432.010; N.Y. G.O.L. § 5-701(a)(1)).  In any event, Griffin's brief also cited cases applying Missouri law, and Dogra neglected to address them. *See Seckel v. Hazelwood Bowl, LLC*, No. 07-1909, 2008 WL 1923263 (E.D. Mo. Apr. 28, 2008)(citing cases).

As for Dogra's reliance upon *Fry v. Accent Mktg. Serv., LLC*, No. 13-59, 2013 WL 2403669 (E.D. Mo. May 31, 2013), the lead plaintiff alleged defendant breached an at-will

employment agreement by failing to properly pay the class members *prior to termination*. That is different from Dogra's allegation, which is that Griffin owes commissions based upon revenue he received *after* termination. (Doc. 76, p. 6). The other case cited by Dogra is distinguishable for the same reason. In *Grantham v. Wal-Mart Stores, Inc.*, No. 08-3466, 2012 WL 12898187 (W.D. Mo. Feb. 28, 2012), defendant "Manley did *not* allege the contractual indemnity agreement between itself and [co-defendant] SLB was to be performed *after* one (1) year," and thus the Court determined "it is hypothetically possible the contract could be performed within one (1) year" and not barred by the statute of frauds. *Id.* at *2 (emphasis added). Again, Dogra alleges that the oral agreement was to be performed indefinitely by Griffin (even after termination). (Doc. 76, p. 6).

Dogra contends that, according to Heligman, he "worked hard" for Griffin until the early termination of the oral agreement in December 2014 and, in turn, CAA Sports' purported "full performance takes the oral contract outside the statute of frauds." (Doc. 76, p. 22). That argument was rejected in the *Sales Serv.* case, wherein Sales Service claimed it would have "fully performed" but for Daewoo's early termination. 770 S.W.2d at 456. The Missouri Court of Appeals held that Daewoo's early termination "does not convert partial performance into full performance such as will remove the cause from the requirements of the statute of frauds." (*Id.*). Furthermore, there is no evidence CAA Sports performed *all* Services for Griffin under the oral agreement. Heligman had no knowledge of who, if anyone, performed each Service for Griffin in 2014. (76-1, at 145:4 – 18). Dogra similarly could not confirm all Services were performed in 2014. (Doc. 71-7, at 168:21 – 170:15).

**E.    Breach of the Implied Covenant and Unjust Enrichment**

Dogra concedes that if his breach of contract claim is dismissed, then his claim for breach of the implied covenant of good faith and fair dealing also fails. (Doc. 76, p. 22 – 23).

14

Dogra also concedes, by his silence, that if his breach of contract claim fails because Griffin and CAA Sports never agreed to post-termination liability, then his unjust enrichment claim similarly fails. He solely argues that, if his breach of contract claim is barred by the statute of frauds, then he should be entitled to pursue an unjust enrichment claim. (Doc. 76, p. 24). However, where an action on a contract is barred by the statute of frauds, recovery on quasi-contract claims is precluded to avoid abrogating the legislature's intent and nullifying the statute. *Sales Serv.*, 770 S.W.2d at 457 – 58 (granting summary judgment on promissory estoppel claim).

Moreover, Dogra admits that Griffin paid CAA Sports $377,111.72 in marketing commissions for 2012 and $582,591.64 (Doc. 77, ¶¶ 22, 24), and thus Dogra's contention that Griffin "has not paid a penny of commission" is obviously incorrect. (Doc., 76, p. 24). Dogra further concedes that: (a) he did not perform any endorsement services for Griffin (Doc. 71-7, at 236:5 – 7); and (b) CAA Sports did not render any such services for Griffin after he terminated the oral agreement in 2014. (Doc. 77, ¶¶ 34, 35). Stated differently, there is no evidence that Dogra conferred a benefit upon Griffin or that Griffin was unjustly enriched.

Lastly, by his silence, Dogra concedes that he cannot establish the objective reasonableness of the 15% commission charged to Griffin, especially for 2015 and 2016, during which CAA Sports performed no endorsement services. *See Miller v. Horn*, 254 S.W.3d 920, 925 (Mo. App. 2008). This point was raised in Griffin's brief (Doc. 71, p. 15) but ignored by Dogra.

## III.   CONCLUSION

The material facts are undisputed and/or uncontroverted by admissible evidence. There are no issues for a jury to decide. Therefore, Griffin is entitled to summary judgment.

DATED: March 24, 2020                    Respectfully submitted,

                                         HUSCH BLACKWELL LLP

                                             Josef S. Glynias, #54974MO
                                             Kyle P. Seelbach, #60382MO 190 Carondelet
                                             Plaza, Suite 600 St. Louis, MO 63105
                                             P: (314) 480-1500
                                             F: (314) 480-1505
                                             josef.glynias@huschblackwell.com
                                             kyle.seelbach@huschblackwell.com

                                         MEISTER SEELIG & FEIN, LLP

                                             */s/ Kevin Fritz*
                                             Mitchell Schuster (admitted *pro hac vice*)
                                             Kevin Fritz (admitted *pro hac vice*)
                                             125 Park Avenue, 7th Floor
                                             New York, NY 10017
                                             P: (212) 655-3500
                                             F: (212) 655-3535
                                             ms@msf-law.com
                                             kaf@msf-law.com

                                             *Attorneys for Robert Griffin, III*

16

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on March 24, 2020 the foregoing document was

served by electronic mail to the following counsel of record:

John D. Comerford
James B. Martin
7733 Forsyth Blvd, Suite 1900
St. Louis, MO 63105
jcomerford@dowdbennett.com
jbmartin@dowdbennet.com

*Attorneys for Plaintiff Rahkspaul (Ben) Dogra*

By:_____*/s/ Kevin Fritz*_____
Kevin Fritz
*Attorney for Robert Griffin, III*

17