UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RAKSHPAL ("BEN") DOGRA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:19-cv-00548-SRC |
| | ) | |
| ROBERT GRIFFIN, III, | ) | |
| | ) | |
| Defendant(s). | ) | |

**Memorandum and Order**

This case involves a fee dispute between a professional football player and one of his former sports agents. When Defendant Robert Griffin, III started his career in the National Football League, he chose Ben Dogra as his agent and CAA Sports LLC as his agency. CAA Sports negotiated several million dollars in endorsement deals on Griffin's behalf. After CAA Sports fired Dogra, both Dogra and CAA Sports claimed entitlement to commissions on Griffin's endorsements. Dogra and CAA Sports arbitrated their dispute, and the arbitrator eventually ruled that Dogra was entitled to Griffin's marketing commissions. CAA Sports then assigned its contractual rights to Dogra, and Dogra filed the present suit seeking commissions that for years Griffin hasn't paid. The matter now comes before the Court on [69] Griffin's Motion for Summary Judgment based on the applicable statute of limitations. The Court grants the Motion.

**I.      Facts and background**

Griffin declared for the NFL draft in January 2012. A highly-touted prospect, Griffin won the 2011 Heisman Trophy—awarded to college football's top player—during his final college season. After declaring for the draft, Griffin chose Dogra to be his NFL contract agent.

1

At the time, Dogra was a representative of CAA Sports LLC. Dogra negotiated Griffin's NFL salary contract when he was drafted.

### B.     Marketing agreement with CAA Sports

Griffin also entered into a marketing agreement with CAA Sports in January 2012. Dogra, along with other representatives of CAA Sports, negotiated the marketing agreement with Griffin. Under the marketing agreement, Griffin agreed to pay CAA Sports a 15% commission on all marketing and endorsement deals negotiated by CAA Sports on Griffin's behalf. Although CAA Sports wanted Griffin to sign a written and exclusive marketing contract with CAA Sports, Griffin demurred. The marketing agreement between Griffin and CAA Sports was oral only, and terminable at will by either party.

### C.     Marketing deals and payment of commissions in 2012 and 2013

As Griffin's salary-contract agent, Dogra headed a team at CAA Sports handling Griffin's representation. Also on the team was CAA Sports representative Mark Heligman, who was principally responsible for Griffin's marketing contract with CAA Sports. Heligman negotiated numerous marketing and endorsement contracts on Griffin's behalf, including significant deals with Adidas, Subway, and Nissan. All told, CAA Sports and Heligman negotiated several million dollars in marketing and endorsement deals for Griffin.

Pursuant to the marketing agreement, Griffin paid CAA Sports $377,111.72 in marketing commissions in 2012 and $582,501.64 in marketing commissions for 2013. Griffin paid the 2012 and 2013 marketing commissions from his bank account in California to CAA Sports' account in California.

### D. Dogra leaves CAA Sports

In November 2014, CAA Sports fired Dogra. Days later, Heligman also left CAA Sports and began working for Dogra. When CAA Sports fired Dogra, Griffin chose to terminate CAA Sports for his NFL salary-contract work so he could continue with Dogra as his salary-contract agent. Dogra spoke with Griffin at that time about also terminating CAA Sports for his marketing work. In December 2014, Griffin sent a letter to CAA Sports, drafted by Dogra, stating: "Effective immediately, I am terminating CAA Sports for all purposes in my representation, including but not limited to termination of any and all marketing representation agreements…." Doc. 71-17. Heligman continued to represent Griffin for endorsement and marketing deals after leaving CAA Sports, and still represents Griffin in that capacity today.

### E. 2014 and 2015 invoices

In December 2014, CAA Sports sent Griffin an invoice for 2014 marketing commissions in the amount of $376,827.98. Days later, Dogra—now separated from CAA Sports—also sent Griffin an invoice for 2014 marketing commissions in the same amount. Griffin did not pay either invoice. The 2014 invoice from CAA Sports states that payment is due on January 15, 2015. In June 2015, CAA Sports sent Griffin an invoice for 2015 marketing commissions in the amount of $221,275.69 (plus the unpaid balance for 2014 commissions). The 2015 invoice states that payment is due upon receipt. Griffin did not pay the 2015 invoice. Although Dogra sues to recover unpaid commissions from 2014 through 2016, the record contains no invoice for 2016. At his deposition, Dogra testified that "fees in 2014 are payable in 2014. … The fees in 2015 are paid in 2015. And the fees in 2016 are paid in 2016." Doc. 71-7 at 199:23-200:4. To date, Griffin has not paid marketing commissions for 2014, 2015, or 2016.

### F. Dogra and CAA Sports' arbitration

Dogra's separation from CAA Sports was contentious. Dogra asserted that the terms of his employment contract entitled him to certain revenues, including commissions on Griffin's marketing deals. Griffin and CAA Sports' dispute entered arbitration in February 2015. In July 2016, the arbitrator awarded monies to both parties on various claims and counterclaims. In relevant part, the arbitrator's award provided:

> CAA shall pay [Dogra] for Marketing Revenues generated by contracts on the books at the time of his termination from January 1, 2014 and forward, for which [Dogra] and/or Mark Heligman were agents and in amounts or percentages provided under such contracts.

Doc. 93-1 at 29-30. The arbitration award further stated:

> I find that Dogra is entitled to client revenue from marketing deals for players for whom he appears on an [Standard Representation Agreement]. The exact amount of these revenues cannot be determined until after an audit of CAA's records with respect to such marketing deals, unless by agreement.

*Id.* at 26. Between September 2016 and August 2018, the arbitrator issued a series of four supplemental opinions and awards.

### G. Muddled communications about unpaid commissions

Both during and after the arbitration proceedings, a muddled series of communications among the various players ensued, with Griffin inquiring about whom he was to pay, and how much; adding to the confusion, Dogra and CAA Sports provided conflicting directives to Griffin. Because both Dogra and CAA Sports invoiced him for 2014 commissions, Griffin expressed concern to Heligman about paying the marketing commissions. In November 2015, Heligman sent a text message to Griffin stating, "I am very confident you are in no way at risk but let's hold off on you paying anything until after our case is settled so you don't have anything to worry about. … Cool?" Doc. 80-1. Griffin responded, "Cool by me brother." *Id.*

4

In November 2017, Griffin retained an attorney, Craig Gant, to represent him in connection with the unpaid commissions. Heligman testified that Griffin told him, on at least two occasions after hiring Gant, that Griffin "was not looking to reduce what he owed." Doc. 76-1 at 87:15-88:6. The same month, Gant emailed Heligman stating that Griffin retained him to "work with [Heligman] and [Dogra] to get to a final resolution regarding the outstanding fee issues." Doc. 76-5. In April 2018, Gant wrote to Dogra's attorney that once he received "all the relevant information we will be prepared to resolve this matter. I like you would prefer this is done outside of a formal legal proceeding." Doc. 76-6. Later the same month, Gant again emailed Dogra's attorney to say he was "working diligently to gather all the relevant documentation necessary to accurately calculate the outstanding fees." Doc. 76-7. The record contains no evidence that CAA Sports had knowledge of Griffin's (or Gant's) communications with Heligman or Dogra in what, by this point, should have been a matter between Dogra and Griffin, hence the lack of context for the next communications. In October 2018, an attorney for CAA Sports wrote to Gant:

> This letter follows up on our conversation on August 28, 2018. During that call we discussed the collection of certain marketing commissions from your client, Robert Griffin, III. … During our call, you indicated that Mr. Griffin is willing to make payment on whatever commissions he owes, but that it was unclear to you whether he owed any commissions and, if so, what amounts are owed.

Doc. 76-9. By late 2018 (though Griffin claims it occurred much earlier), Griffin communicated to Dogra and CAA Sports that he did not owe marketing commissions for 2014, 2015, or 2016 because CAA Sports had not fulfilled its ongoing obligations under the oral contract during those years.

The commissions remaining unpaid, Dogra and CAA Sports treated the filing of suit like a hot potato. After the arbitrator ruled that Dogra was entitled to Griffin's marketing commissions, Dogra wanted CAA Sports to sue Griffin to recover the unpaid fees, but CAA

refused. See Doc. 92-1. In February 2019, Dogra's attorney emailed Griffin's attorney stating that Dogra's "clear preference was for CAA to bring a lawsuit to obtain these commissions." *Id.* Dogra's attorney suggested that CAA Sports was obligated under the terms of the arbitration award to file suit against Griffin. *Id.* At his deposition, Dogra testified that CAA Sports "could have" sued Griffin, but "didn't want" to. Doc. 71-7 at 202:14-15. Dogra further testified:

> A. Because if they sue him, and they sue a client, and they're getting no money out of it —
>
> Q. Yeah. It's not good for business.
>
> A. It's bad for business. It's a bad idea to sue your client who is no longer your client.

*Id.* at 202:25-203:6.

### H. Dogra takes an assignment and files suit

The hot-potato wrangling resulted in CAA Sports assigning to Dogra its rights to the marketing commissions. In the February 2010 assignment agreement, CAA Sports assigned whatever rights it did (or didn't) have, conveying to Dogra: "any claims, rights, or causes of action it may have" with respect to the unpaid commissions. Doc. 5-1. The following month, Dogra filed the present action for breach of contract, representing to the Court that "the oral contract at issue in this case was not formed between Dogra and Griffin, but rather was formed between CAA Sports and Griffin. … Dogra is pursuing this claim by virtue of an assignment of rights he received from CAA Sports." Doc. 55-1 at 1.

## II. Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-

moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the initial burden of showing both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(a).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Self-serving, conclusory statements without support are insufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Discussion**

Dogra filed suit for breach of contract to recover marketing commissions Griffin allegedly owed to CAA Sports for marketing deal revenue received in 2014, 2015, and 2016. The Court has already determined that California's statute of limitations applies to this case. *See* Doc. 79. Griffin moves for summary judgment, arguing that the California statute of limitations bars Dogra's claim. Doc. 71. Because CAA Sports had an oral marketing contract with Griffin, California Civil Procedure Code §339 applies; that section provides that any "action upon a contract, obligation or liability not founded upon an instrument of writing" must be brought within two years. Cal. Civ. Proc. Code §339.1.

Dogra asserts three reasons why the statute of limitations does not bar his claim. First, Dogra contends that his claim did not accrue until 2018, so the two-year limitations period had not yet run when he filed suit in March 2019. Second, Dogra argues that, even if his claim accrued earlier, the statute of limitations was equitably tolled. Finally, Dogra argues that Griffin is equitably estopped from asserting the statute of limitations as a defense because of representations Griffin made to Heligman and to CAA Sports.

A.   **Accrual**

Dogra first argues that the statute does not bar his claim because the claim accrued in 2018. Dogra's claim in this case is derivative. He brings suit to enforce the contractual rights of CAA Sports, based on CAA's assignment of those rights to him. Doc. 55 at 1. The Court has already determined that this claim originated and accrued in California. Doc. 79 at 2-3. "The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191, 292 P.3d 871, 875 (2013). Thus, the question before the Court is when CAA Sports' claim accrued under California law.

CAA Sports sent fee invoices to Griffin for 2014 and 2015. The 2014 invoice states that payment was due on January 15, 2015. Doc. 71-19. The 2015 invoice, dated June 1, 2015, states that payment was due "upon receipt." Doc. 71-21. The record contains no invoice for 2016 fees. Thus, the only evidence in the record for when the 2016 fees were due under the alleged oral contract is Dogra's own testimony. When asked when fees under the contract were payable, Dogra testified that the "fees in 2014 are payable in 2014. … The fees in 2015 are paid in 2015. And the fees in 2016 are paid in 2016." Doc. 71-7 at 199:23-200:4. Griffin did not pay (and to date has not paid) either the 2014 or 2015 invoices. Nor did he pay any amount for 2016

8

fees.  Under California, law, a cause of action for breach of contract generally "accrues at the time of breach regardless of whether any substantial damage is apparent or ascertainable." *Ram's Gate Winery, LLC v. Roche*, 235 Cal. App. 4th 1071, 1084, 185 Cal. Rptr. 3d 935, 944 (2015).

Still, Dogra argues that, under California's discovery rule, the claim did not accrue until 2018.  In California, the discovery rule is an "exception to the general rule for defining the accrual of a cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397, 981 P.2d 79 (1999).  The rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.*  "In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Nguyen v. W. Digital Corp.*, 229 Cal. App. 4th 1522, 1553, 177 Cal. Rptr. 3d 897, 924 (2014).

Dogra argues that CAA Sports did not discover the cause of action for breach of contract until 2018 because, as of the end of 2017, CAA Sports did not know Griffin intended not to pay.  Dogra submitted an affidavit from Frank Moore, CAA Sports' Chief Financial Officer, stating "in December 2017, I did not understand, and had no reason to believe, that Griffin was taking the position that he did not owe the marketing commissions for which CAA Sports had invoiced him."  Doc. 80-2 at ¶ 13.  But the question is not whether CAA Sports knew *why* Griffin had not paid the invoices but instead *that* he had not paid.  The only relevant question is when CAA Sports, by "diligent investigation," could have discovered facts supporting the cause of action for breach of contract. *Nguyen*, 229 Cal. App. 4th at 1553.  A cause of action for breach of contract based on failure to pay accrues—and the statute of limitations begins to run—at the time

9

payment is due.  *See, e.g., Tsemetzin v. Coast Fed. Sav. & Loan Assn.*, 57 Cal. App. 4th 1334, 1344, 67 Cal. Rptr. 2d 726, 732 (1997) (commercial lease); *White v. Moriarty*, 15 Cal. App. 4th 1290, 1299, 19 Cal. Rptr. 2d 200, 205 (1993) (installment payments under note).  The 2014 and 2015 invoices state that payment was due in January and June 2015, respectively.  Although there is no 2016 invoice in the record, Dogra testified that 2016 fees were due in 2016.

The Court finds the discovery rule has no bearing on this case because CAA Sports knew, or should have known, at all relevant times that Griffin had not paid.  CAA Sports could have sued Griffin for failure to pay the fees at the time they came due.  *Id.*  During his deposition, Dogra acknowledged as much, testifying: "CAA Sports didn't want to sue him.  *They could have*."  Doc. 71-7 at 202:14-15 (emphasis added).  As noted above, the applicable statute of limitations is two years.  Cal. Civ. Proc. Code. §339.  Dogra did not file suit until March 2019, more than five years after the 2014 invoice was due, nearly four years after the 2015 invoice was due, and more than two years after the 2016 fees were due.  The statute of limitations bars Dogra's claim unless the statute was otherwise tolled.

  **B.** **Equitable tolling**

Dogra argues that the statute of limitations should be equitably tolled.  "The equitable tolling of statutes of limitations is a judicially created, non-statutory doctrine."  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 99, 194 P.3d 1026 (2008).  "Where applicable, the doctrine will "suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'"  *Id.* (quoting *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370, 73 P.3d 517, 523 (2003).  The doctrine generally applies "when an injured person has several legal remedies and, reasonably and in good faith, pursues one." *McDonald,* 45 Cal. 4th at 100.  "Thus, it may apply where one action stands to lessen the harm that is the subject of a potential second

action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason." *Id.*

Accordingly, the California Supreme Court has applied equitable tolling during a plaintiff's pursuit of a title VII complaint with the EEOC, *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1101-1102, 68 Cal. Rptr. 2d 590 (1997), while an insured was awaiting the insurer's approval or denial of a claim, *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 693, 798 P.2d 1230, 1242 (1990), and even while an employee pursued his employer's nonmandatory internal grievance procedures. *McDonald*, 45 Cal. 4th at 104. The common thread in all these cases is that the plaintiff's pursuit of the alternative remedy provided notice of the claim to the eventual defendant during the limitations period. *See id.* at 102 (equitable tolling requires "timely notice, and lack of prejudice, to the defendant").

Dogra's equitable tolling argument wants for more—Dogra does not argue that CAA Sports had several legal remedies available to it and reasonably pursued one, nor does he argue that his arbitration against CAA Sports provided notice to Griffin during the limitations period or constituted pursuit of his (or CAA Sports's) legal remedies against Griffin. Instead, Dogra argues that Griffin induced CAA Sports to *refrain* from exercising its available legal remedies during the limitations period. Doc. 80 at 7-8. Dogra's argument applies to equitable estoppel. However, "[e]quitable tolling and equitable estoppel are distinct doctrines" under California law. *Lantzy*, 31 Cal. 4th at 383; *see also Chang v. Biosuccess Biotech Co.*, 76 F. Supp. 3d 1022, 1053 (C.D. Cal. 2014). The Court considers Dogra's estoppel argument below. But no evidence exists that CAA Sports pursued *any* legal or administrative remedy against Griffin during the limitations period. Accordingly, the Court finds Dogra's arguments wanting, and California's equitable-tolling doctrine inapplicable.

11

### D. Equitable Estoppel

Finally, Dogra argues that Griffin should be equitably estopped from asserting the statute of limitations as a defense to this action. As noted above, equitable tolling and equitable estoppel are distinct doctrines.

> Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. Equitable estoppel, however, comes into play only after the limitations period has run and addresses the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. Equitable estoppel is wholly independent of the limitations period itself and takes its life from the equitable principle that no man may profit from his own wrongdoing in a court of justice.

*Lantzy*, 31 Cal. 4th at 383 (internal citations and quotation marks omitted). Thus, "[w]here the delay in commencing [an] action is induced by the conduct of the defendant it cannot be availed of by him as a defense." *Id.* at 384 (quoting *Vu v. Prudential Property & Casualty Ins. Co.*, 26 Cal. 4th 1142, 1152–1153, 33 P.3d 487 (2001)).

Dogra argues that Griffin induced forbearance of suit by his communications to Heligman and Dogra's attorney. As the party asserting estoppel, Dogra bears the burden of proof. *Busching v. Superior Court*, 12 Cal. 3d 44, 53, 524 P.2d 369, 375 (1974). Dogra offers evidence that Griffin sent a text message to Heligman in November 2015 in which Griffin agreed to "hold off" on paying marketing commissions until Dogra and CAA Sports resolved their dispute through arbitration. Doc. 80-1. Dogra also offers evidence that after Griffin retained Gant in November 2017, Griffin told Heligman on two occasions that he was "not looking to reduce what he owed." Doc. 76-1 at 87:15-88:6. In April 2018, Gant told Dogra's attorney that once he received "all the relevant information we will be prepared to resolve this matter" and that he preferred it be done "outside of a formal legal proceeding." Doc. 76-6. Later the same month, Gant again emailed Dogra's attorney to say he was "working diligently" to gather all the

necessary documentation. Doc. 76-7. Finally, Dogra offers evidence that Gant told an attorney for CAA Sports in August 2018 that Griffin was "willing to make payment on whatever commissions he owe[d]" but was "unclear" whether he actually owed any commissions. Doc. 77-9.

Dogra contends this evidence creates a genuine dispute of fact as to whether Griffin's statements or actions estop him from asserting the statute of limitations. Doc. 80 at 10. Generally, the determination of equitable estoppel is a question of fact. *Windsor Pac. LLC v. Samwood Co.*, 213 Cal. App. 4th 263, 272, 152 Cal. Rptr. 3d 518, 526 (2013) (citing *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 319, 862 P.2d 158, 166 (1993)). However, where "the facts are undisputed and can support only one reasonable conclusion," the issue is a question of law. *Id.* Here, the Court finds that the facts support only one conclusion: amidst the conflict and confusion between Dogra and CAA Sports, Griffin did not induce CAA Sports, by his statements or actions, to refrain from filing suit during the limitations period.

As noted above, Dogra sues to enforce the contractual rights of CAA Sports, based on CAA's assignment of those rights to him. Dogra made this point explicitly in a previous filing to this Court:

> To be clear – the oral contract at issue in this case was not formed between Dogra and Griffin, but rather was formed between CAA Sports and Griffin. … Dogra is pursuing this claim by virtue of an assignment of rights he received from CAA Sports.

Doc. 55 at 1. After Dogra filed this suit, Griffin sought to compel arbitration because the NFL Players Association requires arbitration of any dispute between a player and his salary agent. Dogra opposed arbitration, arguing that Griffin's marketing contract was with CAA Sports—not Dogra—and that he sued pursuant to the assignment of rights. Doc. 46 at 1-2. The Court ultimately denied Griffin's motion to compel arbitration. Doc. 56. Now, faced with the statute

13

of limitations, Dogra has changed course; arguing he was "always the creditor and real party in interest in this dispute" and that the assignment was only a "technical, legal document" executed to "provide Griffin with clarity" regarding payment. Doc. 55. Having brought suit and opposed arbitration on the basis of an assignment, Dogra cannot now argue that the Court should simply disregard the assignment as a technicality.

The timing of events matters. CAA Sports fired Dogra in November 2014. Heligman also left CAA Sports in November 2014, only days after Dogra was fired. In February 2019, CAA Sports assigned to Dogra "all of its right, title, and interest in any claims, rights, or causes of action it may have against Griffin … with respect to any failure of Griffin to make commission payments to CAA arising out of marketing and endorsement agreements[.]" Doc. 5-1. Thus, Griffin's statements to Heligman and to Dogra's attorney between 2015 and 2018 were not statements made to CAA Sports or to any person with authority to act on CAA Sports behalf. Dogra offers no evidence that CAA Sports was even *aware* of these statements, much less that CAA Sports was induced thereby to refrain from suing Griffin.

Apparently recognizing that Griffin's statements to Heligman are not statements to CAA Sports, Dogra offers the declaration of Moore, CAA Sports' Chief Financial Officer. Moore avers that he had "no reason to believe Griffin was taking the position he did not owe the marketing commissions." Doc. 80-2 at ¶ 13. Thus, Dogra argues that "CAA also believed Griffin would pay the marketing commissions after the proper recipient was determined." Doc. 80 at 9. But Moore's "belief" about Griffin's intentions is irrelevant absent evidence that Griffin induced that belief by his statements or actions. *Schafer v. City of Los Angeles*, 237 Cal. App. 4th 1250, 1261, 188 Cal. Rptr. 3d 655, 663–64 (2015) ("The elements of equitable estoppel are (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct

14

shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury".).

Dogra identifies only one relevant statement Griffin made to CAA Sports: Gant's communication with CAA Sports' attorney in August 2018. At that time, Gant told the attorney Griffin was willing to pay whatever commissions he owed, but "was unclear … whether he owed any commissions" at all. Doc. 76-9. The Court finds this statement insufficient as a matter of law to support Dogra's equitable estoppel claim. To establish equitable estoppel, one party must rely on another party's conduct to his detriment, *and* the detrimental reliance must be reasonable. *Schafer*, 237 Cal. App. 4th at 1261. Here, the Court finds neither element satisfied. First, CAA Sports could not have reasonably relied on Gant's equivocal statement as assurance that payment was forthcoming because Gant expressly questioned whether Griffin owed anything. Further, the evidence does not show CAA Sports relied on this statement in deciding not to sue. Rather, Dogra testified that CAA Sports made a calculated business decision not to sue Griffin, its former client.

> Q. What was your understanding as to why CAA didn't want to sue [Griffin]?
>
> A. Because if they sue him, and they sue a client, and they're getting no money out of it —
>
> Q. Yeah. It's not good for business.
>
> A. It's bad for business. It's a bad idea to sue your client who is no longer your client.

Doc. 71-7 at 202:25-203:6.

In a final attempt to avoid the statute of limitations, Dogra argues in his supplemental reply brief that he—not CAA Sports—"has always been the creditor and the real party in interest in this dispute." Doc. 93 at 2. But the Court finds Dogra's eleventh-hour position incompatible

15

with the language of the arbitration award, his prior statements and actions, and his unambiguous representations to the Court. As a preliminary matter, Dogra admits that the parties to the oral marketing agreement were Griffin and CAA Sports. Dogra and CAA Sports began arbitration of their dispute in 2015. In July 2016, the arbitrator issued his initial award, ruling:

> CAA shall pay [Dogra] for Marketing Revenues generated by contracts on the books at the time of his termination from January 1, 2014 and forward, for which [Dogra] and/or Mark Heligman were agents and in amounts or percentages provided under such contracts.

Doc. 93-1 at 29-30. The arbitration award further stated:

> I find that Dogra is entitled to client revenue from marketing deals for players for whom he appears on an SRA. The exact amount of these revenues cannot be determined until after an audit of CAA's records with respect to such marketing deals, unless by agreement.

*Id.* at 26. Together, these two provisions show that the arbitration award did not change the real party in interest to Griffin's marketing contract. The award states that Dogra is "entitled" to revenues from that contract, but also explains what that entitlement entails, i.e., "CAA shall pay" Dogra the marketing revenues. Thus, the arbitration award adjudicated the dispute over whether CAA Sports would keep any money paid by Griffin (and others) or would have to pay that money over to Dogra.. It did not change the real party in interest to the contract between Griffin and CAA Sports, or function as a *de facto* assignment of the contract.

Dogra's later conduct reinforces this conclusion. First, Dogra admitted that CAA Sports—*after* the arbitration award—"could have" sued Dogra, but didn't want to. Doc. 71-7 at 202:14-15. Further, Dogra, by his attorneys, tried to convince CAA Sports to file suit against Griffin to recover the marketing commissions, even suggesting that CAA Sports was obligated under the arbitration award to sue Griffin. Doc. 93-1. Finally, as late as July 2018, long after the arbitration award "entitling" Dogra to the marketing revenues, Dogra's attorney communicated to Griffin that he should remit the unpaid marketing commissions *to CAA Sports*. Doc 71-24.

16

Just one month after CAA Sports assigned its rights under the contract to Dogra, Dogra filed the present suit.  All of these facts show that CAA Sports was the real party in interest to the contract until the assignment of rights in February 2019.  And Dogra's unambiguous prior representation to this Court does not equivocate: "Dogra is pursuing this claim by virtue of an assignment of rights he received from CAA Sports."  Doc. 55 at 1.

In sum, Dogra has failed to show that he was the real party in interest to the contract before the assignment of rights, and has failed to show that Griffin induced CAA Sports to refrain from filing suit during the limitations period.  Thus, Griffin is not equitably estopped from asserting the statute of limitations as a defense to this action.

CAA Sports' claims against Griffin for 2014, 2015, and 2016 marketing commissions accrued in January 2015, June 2015, and 2016, respectively.  The applicable statute of limitations is two years from the date of accrual.  Cal. Civ. Proc. Code §339.1.  By the time CAA Sports assigned its contractual rights to Dogra in February 2019, the limitations period had already run.  The Court GRANTS Griffin's Motion for Summary Judgment [69].

Date: September 9, 2020.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**